## WATTS v. S. M. HAMILTON COAL CO.

(District Court, E. D. New York. January 22, 1915.)

1. DISMISSAL AND NONSUIT ⬤⟿81—SETTING ASIDE—ADMISSIONS IN ANSWER.
   On an application to set aside a judgment dismissing an action for commissions for procuring a certain contract on plaintiff's failure to appear when the case was reached for trial, in which plaintiff claimed that the answer on file was not that originally filed, that the answer originally filed contained an admission that he procured the contract and was not properly verified, and that his attorney refused to enter judgment upon the unverified answer containing this admission, where it appeared that the answer on file must have been in existence prior to the filing of the alleged original answer, the alleged admission in the answer as originally filed could only avail plaintiff as evidence on the trial, and did not affect the relief which should be granted, as, had the court entered a judgment against defendant by default through a mistake in the papers originally filed, it would have been opened on proper application.

   [Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 182–192; Dec. Dig. ⬤⟿81.]

2. DISMISSAL AND NONSUIT ⬤⟿81—OPENING—TIME FOR APPLICATION.
   Where, because of a misunderstanding between plaintiff and his counsel, plaintiff failed to appear when the case was reached for trial over a year after it was noticed for trial, and it was thereupon marked for dismissal by the court and notice given to plaintiff's attorneys to provide against accidental default, and subsequently an order was made that the complaint be dismissed for failure to prosecute, and that defendant have judgment accordingly, with costs, and execution therefor, the judgment would not be treated as one on the merits which could not be set aside after the term of court, but rather as a mere technical striking of the case from the calendar, coupled with the entry of a judgment for costs to be met before the default could be opened; and hence the default might be set aside, though the application was not made within the term.

   [Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 182–192; Dec. Dig. ⬤⟿81.]

3. COURTS ⬤⟿339 — UNITED STATES COURTS — PROCEDURE — DISMISSAL FOR WANT OF PROSECUTION.
   Notwithstanding the provision of the Revised Statutes making state laws and procedure applicable so far as may be to actions in the federal courts, the court's right to dismiss a case for plaintiff's failure to appear when it was reached for trial was not limited by the rule in the state courts allowing a dismissal if later issues have been tried.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 914; Dec. Dig. ⬤⟿339.]

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by James R. Watts against the S. M. Hamilton Coal Company. On application by plaintiff to compel his attorney of record to deliver certain papers to him and for an order opening a judgment of dismissal and restoring the action to the trial calendar. Motion to open the default granted.

McLear & McLear, of New York City, for plaintiff.
Herbert Barry, of New York City, for defendant.
Meyer Levy, of New York City, for Friedman.

CHATFIELD, District Judge. The plaintiff in the above-entitled action has made an application to compel his attorney of record to deliver to him the papers relating to the various proceedings in the action, and has in connection therewith applied to the court for an order opening a judgment dismissing the action on default and restoring it to the trial calendar.

It appears that the complaint was served and filed in August, 1907, upon an alleged cause of action arising out of transactions in the months of May and December, 1904.

The defendant is a corporation organized under the laws of Baltimore, but doing business in the county of New York, and its officers are located in Baltimore, Md.

It appeared by attorney in this action in the Supreme Court of Richmond county, and removed the action to the United States court, in which a certified copy of the record was filed upon the 2d day of October, 1907. A paper was filed upon the 3d day of October, 1907, in a back marked "answer." This back is the printed form of Davies, Stone & Auerbach, who were then attorneys for the defendant, and bears the file mark of the clerk of the court upon the outside of the paper. The "answer" consists of four sheets of paper containing the same watermark and exactly identical in every way with the copy of the proposed answer prepared by Mr. Barry, in the office of Davies, Stone & Auerbach, prior to the 20th of September, 1907, when, as shown by the correspondence, the original proposed answer and another copy were received by mail by the president of the corporation, who thereupon verified the original and retained the copy in the files of the coal company.

The particular four sheets of paper comprising the answer on file have been made up in the so-called "judgment roll" since the 20th day of April, 1909, and show, upon inspection, no apparent changes in text, with the exception that the words "Supreme Court, Richmond County," have been erased, and the words "United States Circuit Court, Eastern District of New York," written by a different typewriter in their place.

The answer, as filed, is signed in typewriting by Davies, Stone & Auerbach, verified by Howard Adams, as president, and contains the signature of the notary public, Florence Barrett, whose seal is affixed, and the certificate of the clerk of the superior court of Baltimore city, also under date of September 20, 1907, as to the authority of the notary to take acknowledgments, etc.

A copy answer was served upon the attorney for the plaintiff, and the case placed upon the calendar on November 8, 1907, by the plaintiff's attorney. The attorney for the plaintiff had served, upon the 4th of November, 1907, a notice of trial for the 18th, and received admission thereof, and a cross-notice had been served by the attorneys for the defendant upon November 8th.

As was predicted by the clerk of the court to the plaintiff, the case was not actually reached for trial until April, 1909, although apparently called upon the calendar before that time. Upon the day when the case could have been tried, the 5th day of April, 1909, it was marked for dismissal by the court, on motion of the defendant, because of the failure of the plaintiff to appear. In order to provide against accidental default, the court directed the attorneys for the defendant to serve their proposed order for judgment upon the plaintiff's attorney, and this was done, giving him two days' notice of settlement and also of taxation of costs, and upon the 20th day of April, 1909, an order to the following effect was entered:

"Ordered that plaintiff's complaint herein be dismissed upon failure to prosecute, and that defendant have judgment accordingly, with costs as taxed, amounting to the sum of $34.95, and that defendant have execution therefor."

This order recites that no one appeared upon the call of the calendar, and that due notice of trial had been given to the plaintiff's attorney. Judgment was entered accordingly, and nothing more was heard of the matter until the summer of 1914, when the plaintiff, through his present attorneys, came to a judge of the court and requested opportunity to examine the papers in the case. The clerk had hesitated about allowing this examination without order by the court, because of a previous statement by the plaintiff that the papers in the action had been tampered with. The plaintiff thereupon made his motion to compel his former attorney to surrender to him the papers in the matter as above recited, and in a short time thereafter a second motion to open his default. Opposition to the latter was based primarily upon the ground that the term of court at which the judgment by default had been entered had long since expired, but numerous questions involving the charge of altering the record of the court, and the propriety of orders made by the court, have been included as a part of this motion. Much acrimonious discussion between the plaintiff's former attorney and the plaintiff himself, with an examination in open court of that attorney and his former clerks, by the parties to the present proceeding, resulted in an order by the court that this attorney deliver all the papers, including his correspondence with respect to the matter, to the clerk of the court, with an intimation that the question of compensation, as claimed by him, would be withheld from determination until the proceedings as to the action were completely disposed of. Much dispute arose over the question as to whether this attorney's clerk had been at Staten Island searching for the plaintiff and had appeared in court on the day the case was called. His motive for refusing to make an affidavit to that effect was assailed, and it appears that the recollection of all the parties, while positive, in proportion to their feelings in the matter, was

of little reliability from the standpoint of clearing up the questions in dispute.

The plaintiff alleges that he called at the clerk's office of this court on the 29th day of October, 1907; that he then saw the answer filed by the defendant; that he was accompanied by his wife, who also makes an affidavit to the same effect; that he read the answer and made extracts therefrom; that the paper filed as an answer contained an admission, in the third paragraph, that the plaintiff had "procured the contract," for obtaining which he claimed commission. The plaintiff and his wife also allege that this paper filed for an answer was incomplete in that it did not contain the words "notary public" nor the seal of the notary, although it purported to be signed by a notary.

The plaintiff and his wife immediately went to their attorney's office and there claimed to have seen in his possession an answer exactly like the one on file. Shortly afterwards (that is, upon the 6th day of November, 1907) the plaintiff and his wife again called at the office of their attorney and asked if the answer had been amended. The plaintiff then requested his attorney to enter judgment upon the "unverified" answer, but which contained in the plaintiff's opinion the admission that he had procured the contract in question, and the attorney refused to do so, as he had done upon the previous occasion. The plaintiff then told his attorney not to serve the notice of trial or file a note of issue, so as not to lose the right to enter judgment.

It now appears that previous to this the attorney had already served a notice of trial, and upon the 11th day of November, 1907, the plaintiff called at the office of the clerk of this court and found that the note of issue, above referred to, had been filed. This contains the words in ink "October 3, 1907," as the date of issue, written by the clerk in place of the typewritten words "September 4th."

The plaintiff then examined the original answer and claims to have copied the words "procured the contract." He asked the cost of a certified copy, and on the following day, November 12th, he again called at the clerk's office with his wife and discovered that the first page in the third paragraph of the answer then contained the words "contributed to the procuring of such contract" in place of the words "procured the contract," and also that the notary's seal and the date and the words "notary public" had been filled in under the notary's signature. He also testifies that the deputy clerk, who is still in the office of this court, told him that some one had been in the day before, after the plaintiff left, and had asked for the answer, taking it to a table and sitting thereat. The clerk could not recollect whether it was a man or a woman.

Mr. Watts and his wife then left the office of the clerk and went to the office of his attorney and told him that the answer had been changed so that it amounted to a forgery. The attorney did not consider the alleged change of the paper after filing as of serious moment, and then produced and showed to the plaintiff his copy of the answer which the plaintiff alleges was different from the answer that he had previously seen in his attorney's office, on the 29th of October, in that the body of the answer (that is, the third paragraph) was like the answer then on

file, stating that the plaintiff contributed to the procuring of the contract. But this copy answer in the attorney's possession was still blank as to the notary public's signature and other particulars of the verification.

The plaintiff thereupon wrote to his attorney to enter judgment for the full amount, and the attorney upon the 15th of November wrote the plaintiff that his case was upon the calendar for the 18th, and to call at his office without fail upon the 16th of November, 1907. The plaintiff did not receive this letter until the 18th, and then came to Brooklyn, learning that the case would not be tried for two or three years. On the 22d of November, 1907, the plaintiff obtained a certified copy of the answer as then on file and let the matter run until February 12, 1910, when he wrote his attorney, asking him what the status of the case was, and followed this by a registered letter upon the 15th of February, 1910, which letter was received by the attorney and the receipt returned in the mail of 11 a. m., February 16, 1910. In the same mail a letter with the same postmark, from the attorney to the plaintiff, contained the following statement:

"Yours of the 12th inst. received. In view of your continued neglect to reply to my letters, I was surprised to receive same from you. On account of your nonappearance in this matter, an order was made on April 20, 1909, by the court dismissing this action and directing judgment against you with costs in the amount of $34.95."

The plaintiff alleges that he had resided from 1906 to 1911 in the same house on Elizabeth street, West New Brighton, S. I., and that mail merely addressed to him at Staten Island would be delivered to him.

The plaintiff thereafter called upon the clerk of the court and was advised that the term at which the judgment was entered had expired, and that an application to open the default would probably not be considered by the court. He then consulted other attorneys, who gave him the same advice, but apparently the success of his present attorneys in disposing of another matter, which had been running since 1900, led him to take up the present question with them, and they advised him that the motion might be considered.

The copy of the answer shown to the plaintiff upon the 6th of November by his then attorney and now presented to this court bears the indorsement in his handwriting, "Recd. Nov. 1st, 07." The back is entitled in the "United States Circuit Court, Eastern District of New York," while the first page of the complaint shows as well the erasure of the words "Supreme Court, Richmond County," and this erasure is shown upon the cover. A comparison of the typewriting of these covers and of the contents, including the watermark in the paper, shows them to be identical in every respect with the one on file, except that, as claimed by the plaintiff, the blank for the verification and the certificate by the clerk of the court are not filled out in any way. In this respect this copy of the answer corresponds with the one furnished by the defendants from their files, and in which the words above, upon the cover and on the first page, "Supreme Court, Richmond County," have not been erased. The two copies referred to are evidently carbons of

the paper contained in the so-called judgment roll of this court, while the cover in each instance is a ribbon original.

The plaintiff points out that the copy answer indorsed by his attorney upon November 1st should have been served before that day, and that he could not have seen this answer upon the 29th of October, as he and his wife allege they did then see a paper similar to that which they also allege was upon the court's files on the 11th day of November, 1907. It also appears that the copy answer produced from the files of the coal company, and shown to have been in its possession since September 20, 1907, has the eyelet holes throughout the cover and the four sheets of paper punched uniformly, while the copy answer produced by the attorney has eyelet holes punched through the cover, but the two sheets containing the text of the answer and the sheet containing the certificate of the clerk of the court in Baltimore have had the brass binders forced through the paper without the prior punching of a hole therefor. In the same way, the copy of the answer on file has holes punched through the cover and the sheet of paper signed by the notary, while the two pages of the answer proper and the page signed by the court clerk have again had the brass binder forced through the paper without the punching of a hole.

At the time of the occurrence in question, under the removal law then in force, an answer had to be filed in the United States court within such period after the filing of the record on removal as remained of the time to answer in the state court when the application for removal was made. As removal occurred upon October 2d, and the answer was filed upon October 3d, it is evident that the defendant was in time in filing its answer, for it applied in the state court upon the 21st of September for an order of removal, and its time there to answer expired upon September 24th. There was no definite rule requiring any particular service of an answer, and one of the strange circumstances in the case is that the attorneys for the defendant have no copy of its answer and no admission of service, while the plaintiff's copy purports to have been received by his attorney, as has been said, upon November 1st, or 27 days after the answer was filed, and subsequent to the time when Mr. Watts testifies that he saw an answer in the attorney's possession.

It is impossible to reconcile the statements of plaintiff with all of the inferences presented by the papers now on file. It may be that some clerk, in filing an answer in the court, filed an incomplete copy instead of the original, and that later the original sheet, with the signatures of the notary and clerk of the court, was substituted for the incomplete copy on file. But this would not account for the language which Mr. Watts and his wife say was changed in the first page of the answer, and which appears in the copy of the answer sent to Baltimore when the original answer was mailed to that city for verification.

[1] The copy of the answer in the possession of the former attorney for the plaintiff has none of the signatures of the person making the verification, the notary, or the clerk of the court, and the only difference charged as to that copy is in the text of the answer. Again, as the text is the same as that of the answer sent to Baltimore, the

mystery relating to the date of November 1st on the paper, and the mystery with relation to his attorney's action, if the plaintiff be correct, was apparently of no effect, except in so far as it caused a misunderstanding between the attorney and client. The answer actually on file with the court seems to consist of the original sheets (that is, the ribbon copy of the papers typewritten in the office of the attorneys for the defendant, before the original set and another copy were sent to Baltimore to be verified), and therefore must have been in existence, exclusive of verification and signatures, at a time long prior to that on which the plaintiff and his wife say they saw an answer more favorable to the plaintiff in its admission as to his work in procuring the contract in question.

Inasmuch, therefore, as the court would not have entered a judgment against the defendant, except on notice and after an investigation, and the result would certainly have been that the default would have been opened (if default through mistake in the papers had existed) upon such terms as would have seemed proper, it cannot now be held that any provision as to a different admission by the defendant can be of further avail than to offer it as evidence, if the case ever comes to trial.

On this situation the serious difference arising between the plaintiff and his attorney has had an unfortunate result. The plaintiff's attorney knew that the case was on in court, and, as has been said, a serious disagreement has again arisen between this attorney and his clerk as to just what statements the clerk has made about his attendance upon the call of the calendar. But this is immaterial, except from the standpoint of the credibility of the parties and the conduct of the attorney, for the reason that the attorney did know of the case and of the application for judgment, and the judgment of dismissal seems to have been properly entered.

[2] It is impossible to determine, also, whether or not the letters sent to Mr. Watts reached him. Inasmuch as they did not contain definite information that the case was upon the calendar, no particular help or harm is done to the present application, even if we assume that Mr. Watts received the letters. If he did not, then the misfortune arising from the misunderstanding with his attorney became greater, and the sole question now presented, upon which any action can be predicated, is whether the dismissal of an action for lack of prosecution, with a judgment for costs, can be opened by the court after the expiration of the term at which the case was tried.

It may be assumed that, if the defendant had put in its case and received a verdict upon the merits, application would have had to have been made within the term of court in order to set aside that judgment. Whether or not responsibility for failure to keep in touch with his client and to proceed with the action could be thrown by the client upon the attorney would have nothing to do with the disposition of the case upon the merits, for parties must be bound by the authority of their attorneys, when they appear in court by attorney, and when no mistake is shown other than that the attorney and the client have previously

reached a position where the client might seek to have a different attorney substituted.

[3] The plaintiff contends that the rule invoked in the state courts, allowing the case to be dismissed, if later issues have been tried, should be used as the criterion of procedure in this court; but it is evident that the Revised Statutes, making the state laws and procedure applicable so far as may be, cannot control the dismissal of a case by this court for failure to try the case when reached. The question is rather whether the dismissal upon the request of the defendant, with notice to the plaintiff that the cause of action was being dismissed, was a dismissal upon the merits and equivalent to a verdict directed by the court upon default, or whether it was a mere technical striking of the case from the calendar, coupled with the entry of a judgment for costs, which would have to be met before the default could be opened.

The court was not bound on a default to give notice of any hearing of the case upon the merits, nor of a dismissal for the default; but, by serving notice upon the attorney, the court sought to prevent injustice, if the default were accidental.

In The Palmyra, 12 Wheat. 1, at page 10 (6 L. Ed. 531), it is said the court has "power to reinstate any cause dismissed by mistake"; and in the case of City of Manning v. German Ins. Co., 107 Fed. 52, 46 C. C. A. 144, the court says that:

"The only exceptions to that rule (requiring a motion within the term) are that clerical mistakes, such mistakes of fact not put in issue or passed upon as may be corrected by writ of error coram vobis or on motion in lieu of that writ, and mistakes in the dismissal of a case, may be corrected after the expiration of the terms."

In the present application the mistake shown was not in a dismissal of the case nor in anything connected with the procedure, but was due entirely to the responsibility of the attorney in representing his client; but inasmuch as the defendant, instead of seeking judgment upon the merits, merely had the action dismissed from the calendar and entered a judgment for the taxable costs up to date, it would seem that the responsibility of the plaintiff for the acts of his attorney should be measured only by the explanation given by the plaintiff of the matters which put the attorney in the position where the responsibility existed.

The defendant makes out fairly well a showing of circumstances which would indicate that it may be able to defeat the plaintiff's case, but it cannot be said that the plaintiff is so likely not to succeed upon a trial that the action should not be heard; and the court is of the opinion that entry of judgment for costs upon the dismissal of the action for failure to appear upon the calendar is not a judgment upon the merits, and that the mistake of the party in allowing the default can be corrected, if it be shown that the positions of the parties have not changed subsequently thereto.

There would seem to be no reason why the present action could not be tried, and the motion to open the default will therefore be granted, upon the condition that the judgment for costs be satisfied by the plaintiff within such time as may be specified in the order of restoration.